Hurd, Respondent, vs. The Town of Milton, Appellant.

*May 7 — May 24, 1892.*

*(1) Appeal: Reversal because verdict against evidence.  (2–4) Defective
    sidewalk: Personal injuries: Evidence.*

1. The judgment in an action at law will not be reversed on the
ground that the verdict is against evidence, except where the re-
fusal of the trial court to set aside such verdict was a manifest
abuse of discretion.

2. In an action for personal injuries caused by a defect in a sidewalk,
the evidence that a defect existed at the point named in the notice
of injury and complaint, that it had existed so long that the defend-
ant town was chargeable with notice of it, and as to the injuries to
plaintiff caused by her falling at that place, is *held* sufficient to sus-
tain a verdict for plaintiff.

3. The trial court properly refused to strike out testimony that shortly
after the accident plaintiff "complained of her head and back,"
although the witness failed to give the words uttered by plaintiff.

4. A witness was asked whether there had been any change in the
sidewalk from the time of the accident down to a change said to
have been made a few weeks before the trial.  It did not appear
that he knew the condition of the walk during that period, or that
there had been any such recent change.  *Held,* that the exclusion of
the question was not error.

APPEAL from the Circuit Court for *Waukesha* County.
This action was commenced about June 15, 1890, to re-
cover damages alleged to have been sustained by the plaint-
iff by reason of a defective sidewalk in the unincorporated
village of Milton in the defendant town, while traveling
thereon on the evening of April 27, 1889.  The complaint
is in the usual form in such cases, and alleges the usual no-
tice and the presentation and filing of claim.  The answer
consists of admissions, denials, and an allegation of con-
tributory negligence.  At the close of the trial the jury re-
turned a verdict in favor of the plaintiff, and assessed her
damages at $5,000.  From the judgment entered thereon
the defendant appeals.

For the appellant there was a brief by *Jackson & Jackson* attorneys, and *I. C. Sloan,* of counsel, and oral argument by *A. A. Jackson* and *I. C. Sloan.*

*John Winans* and *E. M. Hyzer,* for the respondent.

CASSODAY, J.   Milton is an unincorporated village in the defendant town, and contains a population of about 850. A public street or highway runs north and south through the village, known as the " Fort Atkinson Road," and the same has been fenced out as such and traveled for more than fifty years.   The business portion of the village and the Goodrich Hotel are located on the east side of this highway and near the railroad.   North of such business portion and that hotel there are houses on both sides of this highway for a distance of some forty or fifty rods; and for that distance there is and has been for more than thirty years a sidewalk on each side of this street or highway, and constituting a part thereof.   At the time of the accident the plaintiff was about twenty-two years of age, and resided with Joseph Davis, her step-father, on the west side of this highway, and on the first lot south of the cemetery. On the east side of that highway, at that time, and about half way between the hotel and the house of Mr. Davis, was the residence of Mr. Cornwall, fronting on this street towards the west; and adjoining that on the north was the residence of Mr. Blaisdell, fronting also to the west.   It is conceded by all that the walk in question was built in 1881, under the supervision of one of the pathmasters of the town, and paid for with moneys belonging to the road district; that the stringers were two inches thick and four inches wide; that the boards were fence boards, sixteen feet long, six inches wide, and one inch thick, each cut into four pieces, so that they would be four feet long; that in constructing the walk three stringers were laid flat on the ground,— one in the middle, and one on each side; that

Hurd vs. The Town of Milton.

there were two nails to each board in each outside stringer, and possibly the middle stringer; that the boards extended a few inches beyond the stringers on either side.

The testimony of the plaintiff as to the occurrence of the injury is to the effect that on the evening of April 27, 1889, she had been down town; that on her way back she met Miss Ida Craig; that they, together, with the plaintiff on the side towards the fence, walked north on the sidewalk on the east side of the street for about four rods, to a point a little north of Cornwall's small front gate, when the boards made them fall,— tripped them up,— flew up and threw them both down; that the boards threw the plaintiff so that she struck her back, head, and limbs; that the boards struck across her head and threw her on her back; that when she went down she fell forward, and then twisted over on her back; that the board struck her on the forehead and on her back, limbs, knee, and hips; that she did not know before that the boards were loose at that point; that she had usually traveled on the west side of the street; that it was after dark,— between dusk and dark; that a board came up on the sidewalk, and tripped her. The testimony of Miss Craig, who was at the time only twelve years of age, corroborates the plaintiff as to the time and place of the fall, and is to the effect that they were walking together as stated, when the plaintiff stepped on the end of the board, and the end towards the witness flew up and tripped the plaintiff, and they both fell. The notice to the supervisors locates the defect and place of the injury " at a point about nineteen feet and five inches south of the northwest corner of Cornwall's premises; " and the statement of the claim filed and the complaint fix it at the same point.

There were several witnesses on the part of the plaintiff, whose testimony tends to prove that at the time of the injury, and for several weeks, if not months, prior thereto,

there were two or three loose boards in the walk in front
of Cornwall's lot, at or near the point designated; and that
in May or June subsequent to the injury the walk at that
point was repaired.   On the other hand, the defendant,
while conceding that the walk was out of repair in front of
Blaisdell's lot at the time of the injury, and that the same
was subsequently repaired, strenuously insists that there
was at that time no defect in the walk at the particular
point designated, nor anywhere in front of Cornwall's lot.
In support of such contention ten witnesses were sworn
and examined on the part of the defendant, who testified to
the effect that the walk at the point designated,—that is to
say, in front of the north half of Cornwall's lot,— was re-
paired in July, 1888, by putting new stringers or sills under
the walk, by taking plank and splitting them and putting
one under the center of the walk and one under the ends
of the boards, on each side, outside of the old stringers, and
nailing the boards to such new stringers with wire nails,
whereas they had previously been nailed to the old string-
ers with common nails; and some of this testimony is given
with circumstantial corroboration.

The jury were instructed to the effect that if they found
that the plaintiff did not sustain damage by reason of a
defect consisting of loose boards and decayed stringers
thereunder at the point mentioned in the notice and alleged
in the complaint as about nineteen feet and five inches south
from the northwest corner of Cornwall's premises, then
their verdict must be for the defendant.   The verdict in
favor of the plaintiff is necessarily to the effect that at the
time of the injury such defect existed at the point named
in the notice and alleged in the complaint.   There is cer-
tainly plenty of evidence in the record to sustain this ver-
dict.   The contention really is that it is against the great
weight and preponderance of the evidence.   One of the
counsel goes to the extent of claiming that it is our duty to

Hurd vs. The Town of Milton.

reverse the judgment unless we are satisfied with the verdict; that is to say, unless we, as jurymen, would have returned a like verdict.   To hold such a rule would not only be contrary to the decisions of this court during its entire existence, but in direct violation of that clause of our state constitution which declares that "the right of trial by jury shall remain inviolate." [Art. I, sec. 5.]   That right is secured to the plaintiff in this case.   This court, in an action at law like this, cannot reverse on the ground that the verdict is against evidence, except where the refusal of the trial court to set aside the same is a manifest abuse of discretion.   This is not such a case.

Upon the same theory we must hold that the evidence tending to prove that such defect had existed for a sufficient length of time prior to the injury to charge the defendant with notice is such as authorized the submission of that question to the jury.

It appears that the plaintiff did not employ a doctor until twenty days after she fell upon the walk.   The doctor then found her suffering from spinal meningitis.   It is strenuously contended that this condition was not caused nor induced by the fall in question, but was the result of her conduct, and what occurred between that time and the time of calling the doctor, and particularly by fast riding on a trip to Ft. Atkinson, May 10, 1889; and evidence was given tending to show such to be the fact.   But the verdict in favor of the plaintiff is against that theory, and we are forced to hold that it is sustained by sufficient evidence in behalf of the plaintiff.   It is true, the defendant's expert witnesses, in answer to its hypothetical question, gave it as their opinion that the spinal meningitis was not the result of the fall; but the same witnesses, or some of them, with the hypothetical question modified so as to conform to the evidence on the part of the plaintiff, gave their opinion that it might have been caused by the fall.

We perceive no error in refusing to strike out testimony to the effect that after the injury, and on the same evening it occurred, the plaintiff "complained of her head and back." 1 Greenl. Ev. § 102. The only ground upon which it is claimed that this evidence was inadmissible is that the witness failed to give the words uttered by the plaintiff, but merely gave his version of what she said. The distinction appears to be too refined for the practical administration of the law.

The witness Lea, having testified on behalf of the defendant as to the condition of the walk in front of Cornwall's lot from October, 1888, down to April 27, 1889, and whether there was any change in the walk or loose boards there during the time, and how it compared with other walks on that side of the street during the time, was asked whether there was any change in that walk from April 27, 1889, down to the change made a few weeks before the last trial, and error is assigned because the same was excluded. But it does not appear from his testimony that he knew the condition of the walk from the time of the injury down to the change just before the trial, mentioned in the question, nor that there had been any such recent change. If, as claimed, it was desirable to identify the section of the walk in court, and which had been taken up some twenty months after the injury, as the part of the walk at the point in question at the time of the injury, then it was due to the court and the plaintiff that questions more appropriate therefor should have been put.

The witness Mrs. Burhans, having testified on behalf of the defendant as to the condition of the plaintiff, and as to what she said and did, and failed to say and do, May 3, 1889, finally stated: "She had been sick more or less, that I know of, the last seven or eight years; *but I never went to see her when she was sick, so I don't know* anything about it." Error is assigned because this was stricken out on

Patry vs. The Chicago, St. Paul, Minneapolis & Omaha R. Co.

motion of the plaintiff. Counsel for the defendant contends that the testimony so stricken out reached back and covered considerable of her other testimony. But we are satisfied from the nature of her testimony, the cross-examination, and the state of the record, that it was not so intended by the trial court, nor so understood by the court or jury.

Mr. Fuller, having testified on behalf of the defendant that he was present at a conversation between his wife and the witness Ida Craig, who was with the plaintiff when she fell, in relation to the accident, was asked, "Did she say anything in that conversation about the boards flying up?" Error is assigned because this question was excluded. It is enough to say that, while Miss Craig was examined in respect to the conversation relative to the accident, yet she was not examined as to anything being said in that conversation about the boards flying up, and hence there was no foundation for the question for the purpose of impeaching her in that regard.

The charge of the court is very clear and concise, and fully and fairly covers all the issues in the case. The record is voluminous, but is free from error.

*By the Court.*— The judgment of the circuit court is affirmed.